IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIONTE YOUNG, <br><br> Plaintiff, <br><br> vs. <br><br> THOMAS J. DART, COOK COUNTY SHERIFF, ET AL., <br><br> Defendants. | CASE NO. 17-CV-1914 <br> JUDGE STEVEN C. SEEGER <br> MAGISTRATE JUDGE JEFFREY COLE |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT AND STATEMENT OF ADDITIONAL FACTS**

Pursuant to Northern District of Illinois Local Rule 56.1, Plaintiff Dionte Young submits the following Response to Defendants' Local Rule 56.1 Statement ("RDSOF")

## GENERAL RESPONSES AND OBJECTIONS

1. Plaintiff has attempted to respond to all of the statements in the Defendants' Local Rule 56.1 Statement ("DSOF"). To the extent that Plaintiff inadvertently did not address any of the DSOF's purported undisputed facts, he denies them.

2. Plaintiff's responses are based on information currently known to Plaintiff; Plaintiff reserves the right to revise or modify his responses to the extent that additional information becomes known to him. To the extent Plaintiff disputes one of the statements in the DSOF, Plaintiff cites only to evidence of facts sufficient to demonstrate the existence of, and to apprise this Court of, a genuine issue of material fact. Plaintiff has not provided—and need not provide—comprehensive citations or references to all the evidence on which Plaintiff may rely to establish facts, at trial or otherwise.

3. Plaintiff expressly reserves and does not waive his right to rely upon additional or different facts, whether or not cited herein, at trial or otherwise.

4. Statements that are undisputed in Plaintiff's RDSOF are undisputed solely for purposes of summary judgment. Plaintiff reserves all evidentiary and other objections to the evidence cited by Defendants.

## REPONSES TO INDIVIDUAL STATEMENTS

Subject to his General Responses and Objections, Plaintiff responds to the individual statements of Defendants as follows:

1. Plaintiff, Dionte Young, alleges in his Second Amended Complaint that he was attacked while in Division 5 bullpen in the Cook County Jail on November 7, 2016. (Def. Ex. 1, Dkt. No. 38)

**Response**: Disputed. Plaintiff does not allege that he was attacked "while in" a cell; he alleges that he was attacked while "placed in a line awaiting movement to [court]." Def. Ex. 1 ¶ 12–13. Moreover, discovery has revealed that the attack did not place in "Division 5," but in an "area between [the] criminal court building and the Department of Corrections" "called the bridge." Def. Ex. 4 (Cook County Sheriff ("CCS") 30(b)(6) Tr.) at 16:12-17:1 (describing setting of video footage where attack took place).

2. Defendant Thomas Dart is the Sheriff of Cook County and Defendants J. Oomens, A. Sanchez, A. Members, M. Brewer, Sergeant Plante are correctional officers at the Cook County Jail ("CCJ"). (Def. Ex. 1, Dkt. No. 38)

**Response**: Undisputed, though Brewer, Members, Plante, and Sanchez are not named defendants.

3. Plaintiff was attacked and injured by another detainee on November 7, 2016, and alleges in his *Second Amended* Complaint that Defendants failed to protect him from harm and failed to intervene timely during the attack pursuant to the Eighth Amendment and unlawful policies and procedures (*Monell*) allowed his injuries to occur. (Def. Ex. 1, Dkt. No. 38)

**Response**: Undisputed.

4. Plaintiff alleges that Defendants failed to properly search inmates to ensure no weapons were present in the holding bullpen. (Def. Ex. 1, Dkt. No. 38)

**Response**: Undisputed.

5. Plaintiff alleges that Defendants failed to properly position themselves relative to known violent inmates to prevent or timely intervene during the attack. (Def. Ex. 1, Dkt. No. 38)

**Response**: Undisputed. Plaintiff notes that he alleges that the *Officer* Defendants, among other failures, failed to properly position themselves relative to known violent inmates to prevent or timely intervene during the attack. See Def. Ex. 1 (2d Am. Compl.) ¶¶ 23–29.

6. Plaintiff alleges that Defendants failed to intervene to prevent Plaintiff's constitutional violation when they had the opportunity and duty to do so. (Def. Ex. 1, No. 38)

**Response**: Undisputed, to the extent that Defendants' use of the language "Plaintiff's constitutional violation" refers to "the violation of Plaintiff's constitutional rights" alleged in the Second Amended Complaint, *see* Def. Ex. 1 (2d Am. Compl.) ¶ 20 ("During the assailant's attack on Plaintiff, the individual Defendant Officers failed to intervene to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity and duty to do so."). Plaintiff notes that he alleges that the *Officer* Defendants, among other failures, failed to intervene when they had an opportunity and constitutional duty to do so. *See id.* ¶¶ 23–29.

7. Plaintiff alleges that Defendants failed to restrain, improperly screen, and segregate inmates charged with violent crimes from non-violent inmates. (Def. Ex. 1, Dkt. No. 38)

**Response**: Undisputed. Plaintiff notes that he alleges that the *Officer* Defendants, among other failures, failed to restrain, improperly screened, or segregate inmates charged with violent crimes from non-violent inmates. See Def. Ex. 1 (2d Am. Compl.) ¶¶ 23–29.

8. Due to the nature of the claims asserted by Plaintiff, the United States District Court for the Northern District of Illinois has jurisdiction pursuant to 28 U.S.C.§ 1331. Venue is proper in this district court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

**Response**: Undisputed.

9. On June 27, 2016, Plaintiff was admitted to the Cook County Jail as a pre-trial detainee and assigned to Division 6. (Def. Ex. 2, YOUNG CCSAO 003; Def. Ex. 3, Plaintiff deposition taken October 16, 2019 Pg. 9:1-2; 10:18-20)

**Response**: Disputed. Plaintiff was arrested by the Chicago Police Department on June 27, 2016 but was not detained at Cook County Jail on that date; he was placed on electronic monitoring. Pl. Ex. A (Movement History showing "EM Processing" on June 27, 2016); Pl. Ex. B (Bed Assignment showing "EM" between June 28 and August 16, 2016). Plaintiff was admitted to Cook County Jail on August 16, 2016. *See id.* (showing transfer movement to "RCDC 11"); Def. Ex. 4 (CCS 30(b)(6) Tr.) at 13:1-7 (confirming that "RCDC" is synonymous with "Receiving" at Cook County Jail). Plaintiff also notes that Defendants filed an unredacted version of their Exhibit 2 such that Plaintiff's Social Security number is publicly available on the docket, in violation of Rule 5.2 of the Federal Rules of Civil Procedure.

10. Plaintiff was charged with aggravated battery against two different individuals and later convicted. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 9:1-19; 31:16-19)

**Response**: Disputed. Plaintiff was originally charged with Aggravated Domestic Battery on August 16, 2016. Pl. Ex. C. On September 7, 2016, the charges were amended to include three counts of Aggravated Domestic Battery, three counts of Aggravated Battery, one count of Domestic Battery, and one count of Unlawful Restraint. Pl. Ex. D. At trial, he was found Not Guilty of all counts except for one count of Aggravated Battery. *Id.*

11. Plaintiff was sentenced to five (5) years in the Illinois Department of Corrections for aggravated battery and possession of a controlled substance. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 10: 2-10)

5

**Response**: Undisputed.

### NOVEMBER 7, 2016

12. On November 7, 2016, Plaintiff was on his way to court and was placed in a holding bullpen while waiting for his court room to be called. (Def. Ex. 3, Plaintiff's deposition taken on October 16, 2019 Pg. 11:20-24; 12:1-2)

**Response**: Undisputed.

13. On that date, there were approximately 50-60 inmates in the bullpen. (Def. Ex. 4, Rule 30(b)(6) deposition of Joseph Hilburger taken October 27, 2020 Pg. 63:2-5)

**Response**: Undisputed.

14. All inmates in the bullpen were being held temporarily, for about ten (10) to fifteen (15) minutes until they are called by a specific courtroom. (Def. Ex. 4, Rule 30(b)(6) deposition of Joseph Hilburger taken October 27, 2020 Pg. 20:5-18)

**Response**: Disputed. At the time of Plaintiff's attack, detainees remained in the holding cell for "[t]ypically an hour to an hour and a half," Pl. Ex. E (Oomens Tr.) at 38:20–24, and could be in the holding cell for five or six hours depending on when they have court, *id.* at 36:14-37:1. *See also* Pl. Ex. F (Plante Tr.) at 39:15-21 ("Maybe an hour, an hour and a half.").

15. On that date, prior to being placed in the bullpen all detainees were searched for weapons in each division via the pat down and body scan machines before they left their divisions. (Def. Ex. 4, Rule 30(b)(6) deposition of Joseph Hilburger taken October 27, 2020 Pg. 64:23-24; 65:1- 10)

**Response**: Undisputed.

16. As detainees, including Plaintiff, enter the bullpen area from their divisions, their court passes are collected by Officer Members. (Def. Ex. 5, Michael Brewer deposition taken

October 22, 2019 Pg.:20:6-24; 21:1-24; 22:1-6 and Def. Ex. 6, Division 5 Bullpen Video at 8:38:34AM)

**Response**: Undisputed.

17. The video shows Plaintiff entering the bullpen holding cell at 8:39:00AM. (Def. Ex. 6, Division 5 Bullpen Video at 8:39:00AM)

**Response**: Undisputed.

18. The video shows, Officer Oomens directly in front of the bullpen cell door, Officer Members is standing adjacent, Officer Brewer is standing directly behind Officer Oomens and Officer Sanchez is standing next to the detainees lined up outside of the bullpen. (Def. Ex. 6, Division 5 Bullpen Video at 8:50:15AM)

**Response**: Undisputed as to the positions of the officers at the particular point in time referenced in this paragraph. However, the officer standing next to the detainees lined up outside the bullpen is not Officer Sanchez, but is Deputy Aquino from Court Services. Def. Ex. 7 (Incident Report) (listing "J Aquino" as being involved in the incident); Def. Ex. 5 (Brewer Tr.) at 38:17-22 ("That's Deputy Akil from the courts.").

19. Plaintiff exits the bullpen at 8:50:30AM for court. (Def. Ex. 6, Division 5 Bullpen Video at 8:50:30AM)

**Response**: Undisputed.

20. As shown in the video, Plaintiff walks to the line for court at 8:50:49AM in what appears to be a green colored jumpsuit. (Def. Ex. 6 Division 5 Bullpen Video at 8:50:49AM)

**Response**: Undisputed.

21. Manuel Gama ("Gama"), CCJ detainee, exits the bullpen cell at 8:50:49AM for court and at 8:51:05AM walks up behind Plaintiff and hits him. (Def. Ex. 6, Division 5 Bullpen Video at 8:50:49AM and Def. Ex. 7, Incident Report YOUNG CCSAO 001-002)

**Response**: Undisputed.

22. As Gama walks up to Plaintiff, the video shows Officer Members standing in the doorway of the cell. (Def. Ex. 6, Division 5 Bullpen Video)

**Response**: Disputed. Officer Members is standing off to the side as Gama exits the cell, and only after Gama has already exited the cell, Members enters the cell and has his back turned to Gama. Pl. Ex. G. For reference, Officer Members is the dark-skinned officer standing to the right of, and then inside, the holding cell door; Officer Brewer is the light-skinned officer without any hat on; Defendant Oomens is the light-skinned officer wearing a baseball cap with the visor facing forward; Deputy Aquino is the light-skinned officer wearing a baseball cap with the visor facing backward.

23. At 8:51:06AM, the video shows Officer Brewer immediately grab the offender Manuel Gama. (Def. Ex. 5, Michael Brewer deposition taken October 22, 2019 Pg.:40:15-17 and Def. Ex. 6, Division 5 Bullpen Video)

**Response**: Undisputed.

24. The Plaintiff and Gama were holding on to each other and subsequently went down to the ground. (Def. Ex. 6, Division 5 Bullpen Video and Def. Ex. 7, Incident Report YOUNG CCSAO 001-002)

**Response**: Undisputed.

25. The video shows the officers rushed in "within seconds" at 8:51:09AM. (Def. Ex. 6, Division 5 Bullpen Video)

**Response**: Undisputed.

26. Officer Members leaves the bullpen at 8:51:14AM, steps in to assist the other officers. (Def. Ex. 6, Division 5 Bullpen Video at 8:51:14AM)

**Response**: Undisputed.

27. In less than 40 seconds, officers successfully break up the fight and separate Plaintiff and Manuel Gama. (Def. Ex. 6, Division 5 Bullpen Video)

**Response**: Undisputed as to officers separating Gama from Plaintiff. Plaintiff disputes that the event was a fight to the extent that term implies a mutual altercation; the officers responded to an attack by Gama on Plaintiff after which Plaintiff attempted to defend himself. Pl. Ex. H.

28. Once the officers separated Plaintiff and Gama, they both were placed in handcuffs and taken to Cermak separately for medical attention. (Def. Ex. 5, Michael Brewer's deposition taken October 22, 2019 Pg. 46:21-24;47:1-4 and Def. Ex. 7, Incident Report YOUNG CCSAO 001-002)

**Response**: Undisputed.

29. The inmate fight was recorded on mounted camera #CCB-CAM 0.064 Vestibule B105 at 8:51:00AM. (Def. Ex. 7, Incident Report YOUNG CCSAO 001-002).

**Response**: Undisputed as to the recording. Plaintiff disputes that the event was a fight to the extent that term implies a mutual altercation; the officers responded to an attack by Gama on Plaintiff after which Plaintiff attempted to defend himself. Pl. Ex. H.

30. Plaintiff was seen by Dr. Fayez M. Mekhael, MD in urgent care. (Def. Ex. 8, Plaintiff's Medical Record YOUNG CCSAO 605)

**Response**: Undisputed.

31. Plaintiff had a 0.5cm abrasion to his upper inner lip and prescribed Ibuprofen 600mg, ordered to rinse mouth with water and a bacitracin ointment was applied. (Def. Ex. 8, Plaintiff's Medical Record YOUNG CCSAO 605)

**Response**: Undisputed.

32. No weapon was used to attack Plaintiff. (Def. Ex. 7, Incident Report YOUNG CCSAO 001-002 and Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 17:11-15; 18:2-5; 22:4-8)

**Response**: Undisputed.

33. When Gama attacked Plaintiff, officers immediately rushed in to break up the fight. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 18:7-14)

**Response**: Undisputed.

34. Plaintiff was unexpectedly attacked from behind for no reason. (Def. Ex. 9, Plaintiff's Inmate Grievance YOUNG CCSAO 005)

**Response**: Undisputed.

35. Plaintiff was attacked by someone he did not know, never met before, and did not know his name. (Def. Ex. 3, Plaintiff's deposition October 16, 2019 Pg. 12:13-14; 13:1-2)

**Response**: Disputed. Plaintiff and Gama had a history. As noted in the incident report, Plaintiff "stated to Sargeant Plante that the incident is from a prior time when inmate Young observed inmate Gama tampering with a metal vent in holding cell located in the CCB [Criminal Courts Building] building Room 202 and stated that he was going to tell if he did not stop." Def. Ex. 7 (Incident Report). Plaintiff also explains his previous encounter with Gama during an earlier court appearance to Sergeant Plante during an interview following the incident, including that he observed Gama being vulgar to a female officer and hiding a weapon in one of the cells

10

in the Criminal Courts Building. Pl. Ex. I (Nov. 7, 2016 Interview of Plaintiff). In addition, Gama states to Sergeant Plante during an interview following the incident that "there was words exchanged between me [Gama] and the other—the other detainee [Plaintiff] and [unintelligible] to a fistfight." Pl. Ex. J (Nov. 7, 2016 Interview of Gama). Gama further states, in response to Sergeant Plante's question, "Do you know him [Plaintiff] or is this past stuff coming back or it's like stuff from the streets or— you ever see him [Plaintiff]?" that the incident was the result of "something that happened here [Cook County Jail] between us [Gama and Plaintiff]." *Id.*

36. Plaintiff refused protective custody. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 24:5-18)

**Response**: Undisputed only to the extent this paragraph refers to Plaintiff's refusal of protective custody in the wake of the attack.

37. Plaintiff did not indicate a left hand injury in his inmate grievance form. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 21:21-24; 22:1-3)

**Response**: Undisputed.

38. Plaintiff had no issues or incidents with anyone prior to November 7, 2016. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 11:10-13)

**Response**: Disputed. *See* Response to DSOF ¶ 35.

39. It is roughly ten officers in the entire bullpen area. (Def. Ex. 3, Plaintiff's deposition taken October 16, 2019 Pg. 30:2-4)

**Response**: Disputed. Four officers were present outside the holding cell in the minutes leading up to the incident. Pl. Ex. G.

40. When a detainee attacks another detainee, officers are expected to intercede to prevent any further harm. (Def. Ex. 4, Rule 30(b)(6) deposition of Joseph Hilburger taken October 27, 2020 Pg. 69:10-24; 70:1-9)

**Response**: Disputed. The oral testimony on which Defendants base this fact is in response to leading questions that Defendants' counsel posed to her own witness, and thus is inadmissible. *See* Fed. R. Evid. 611(c).

## PLAINTIFF'S RESPONSIVE STATEMENT OF FACTS ("PSOF")

1. "Court movement" is the process at Cook County Jail during which detainees are moved between their housing and scheduled court appearances. Def. Ex. 4 (CCS 30(b)(6) Tr.) at 22:10–18.

2. On November 7, 2016, and going back to at least approximately 2013, the policy and practice at the Cook County Jail was not to consider detainee security classification for court movement purposes—even though as a result 40-50 or more detainees of any security classification could be in a holding cell at the same time. Def. Ex. 4 (CCS 30(b)(6) Tr.) at 20:22–21:3, 28:3–10, 28:23–29:10; Def. Ex. 5 (Brewer Tr.) at 15:18–16:1.

3. On November 7, 2016, the policy and practice at Cook County Jail was not to put detainees in restraints for court movement purposes. Pl. Ex. E (Oomens Tr.) at 21:9–17.

4. In or around 2017, the policy and practice at Cook County Jail for detainee court movement changed, including that detainees would not be held in a holding cell or bullpen as a general matter, and that detainees would be kept in restraints. Def. Ex. 4 (CCS 30(b)(6) Tr.) at 28:11–22. The change was implemented overnight. Pl. Ex. K (Members Tr.) at 12:7–12.

5. The basis for the change to keep detainees in restraints for court movement is because of the altercations that would regularly occur during court movement. Pl. Ex. E (Oomens Tr.) at 26:12–27:4.

6. These changes reduced altercations between detainees during court movement significantly, from approximately one per week to less than one per month. Def. Ex. 4 (CCS 30(b)(6) Tr.) at 30:4–31:13; Pl. Ex. E (Oomens Tr.) at 28:2–9.

7. On November 7, 2016, Plaintiff's security classification was medium. Gama's security classification was maximum. Pl. Ex. L (Plaintiff's Classification History); Pl. Ex. M (Defs.' Interrogatory Responses) at 2.

8. The officers at the bridge knew Gama's security classification because Gama's court pass when arriving at the bridge listed his name and the division from which he came. Def. Ex. 5 (Brewer Tr.) at 33:7–29. In addition, the detainees brought to the bridge that day were brought to the bridge grouped by division. *Id.* at 10:1–10. It is widely known that Division 9 houses maximum security detainees. *Brown v. Cook Cty.*, 332 F.R.D. 229, 233 (N.D. Ill. 2019) ("divisions 9 and 10 of the jail [] house maximum security detainees"); *Hudson v. Preckwinkle*, No. 13-CV-8752, 2015 WL 1541787, at *1 (N.D. Ill. Mar. 31, 2015) ("Division IX is a maximum security division designed to house roughly 1,000 male detainees.")

9. The "[m]aximum security [classification] is for inmates who present the greatest risk of harm to security in the CCDOC and the safety of others." Pl. Ex. N (Cook County Jail Inmate Handbook at 2. Cook County Jail Division 9 houses maximum security detainees such as Manuel Gama. Pl. Ex. O (Gama Booking Card); Pl. Ex. P (Cook County Jail Division Information webpage printouts from September 2016 and present).

10. Gama was detained due to his arrest and charges that included first-degree murder and armed robbery. Pl. Ex. Q (*see* highlighted portions). Gama was convicted of First-Degree Murder and Aggravated Battery Based On Discharge Of A Firearm and sentenced to two consecutive 20-year sentences. *Id.*

13

11. Gama did not present any identification to Officer Oomens at the holding cell door before attempting to leave the holding cell. Pl. Ex. F (Plante Tr.) at 37:1–9; Pl. Ex. R (Security Camera Video) at 0:40–1:00.

12. Oomens stepped away from the cell door and Gama with his back turned to Gama, and without Gama having presented any identification to him. Pl. Ex. R (Security Camera Video) at 0:40–1:00.

13. At the moment Gama was exiting the holding cell without showing any identification, Officers Brewer and Members also had their backs turned to him. Pl. Ex. G.

14. Gama should not have been able to exit the holding cell as he did, without an officer verifying his identity, immediately before attacking Plaintiff. Pl. Ex. F (Plante Tr.) at 38:24–39:4. The policy at the time of the attack was to verify the identity of detainees through reviewing their identification cards and court passes before allowing them to exit the holding cell; those detainees who do not present proper documentation placed back into the holding cell. Pl. Ex. K (Members Tr.) at 27:20–28:10, 29:4–10; Pl. Ex. E (Oomens Tr.) at 24:21–25:10; Pl. Ex. F (Plante Tr.) at 35:24–36:7.

15. At most, approximately ten detainees would be called to exit the holding cell to go to court at a time. Def. Ex. 5 (Brewer Tr.) at 14:22–15:12.

16. Maximum security detainees "are potentially more [likely] to go assault another [detainee], especially if they can see it's a medium security risk [detainee]. . . . That's why we keep separate – all classifications separate for safety and security of the department." Pl. Ex S (Janus Tr.) at 213:4–16; Pl. Ex. T at 112.

17. It is unsurprising that holding large numbers of detainees, of different security classifications, at the same time, results in a larger number of altercations than when holding

14

large numbers of detainees in such a manner is not done as a general matter. Def. Ex. 4 (CCS 30(b)(6) Tr.) at 34:13–35:20.

18. In 2016 and today, maximum security detainees are housed separately from minimum or medium security detainees at Cook County Jail. Pl. Ex. P (Cook County Jail Division Information webpage printouts from September 2016 and present).

19. When Plaintiff was taken to Cermak Health Services immediately following the attack, he complained to Dr. Mekhael of pain in his left hand. Def. Ex. 3 (Pl. Tr.) at 13:19–23 ("So they sent me to Cermak. . . . And then I was telling him, man, something' wrong with my hand, you know, my hand is hurting."), 24:2–7 ("I talked to the doctor. . . . And I told him my head was hurting, and I told him my hand was hurting.").

20. Plaintiff submitted a health service request on December 22, 2016, stating "I need brace for my hand which I injured that still feel like it's hurt." Pl. Ex. U (YOUNG CCSAO622).

21. Plaintiff submitted a health service request on December 25, 2016, stating "I think I have a broken or crack bone in my left hand. . . . After I was in a incident I thought it would be good by now, but it's not getting better." Pl. Ex. V (YOUNG-CCSAO619).

22. Plaintiff submitted a health service request on March 8, 2017, stating "My hand is hurting very badly. . . . Doctor was waiting on ex-rays for results from the other day. Have possible arthritis in left hand from injury . . . . Doctor should have ex-rays from the other day I took to complete examination." Pl. Ex. W (YOUNG CCSAO621).

DATED: December 21, 2020         Respectfully submitted,

         DIONTE YOUNG

By: /s/ E. Glenn Rippie
    E. Glenn Rippie
    grippie@jenner.com
    Amit B. Patel
    apatel@jenner.com
    Marjorie R. Kennedy
    mkennedy@jenner.com
    JENNER & BLOCK LLP
    353 North Clark Street
    Chicago, IL 60654-3456
    Telephone: +1 312 222 9350
    Facsimile: +1 312 527 0484